(43 South. 900.)

No. 16,392.

GAHAGAN v. NEW ORLEANS G. N. R. CO. et al.

(April 29, 1907.)

Master and Servant—Injury to Servant—Pleading.

In an action brought for damages for personal injuries received through the fault and negligence on the part of the defendants, it is not sufficient to allege, or set out facts, or conditions, from which an injury might have been occasioned. Plaintiff's pleadings must establish a causal connection between the facts or conditions stated and the injury actually received.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 818.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by William J. Gahagan against the New Orleans Great Northern Railroad Company and the New Orleans & Northeastern Railroad Company. Judgment for defendants, and plaintiff appeals. Affirmed.

John Joseph Reilley and St. Clair Adams, for appellant. Farrar, Jonas & Kruttschnitt, for appellee N. O. G. N. R. Co. Hall & Monroe, for appellee N. O. & N. E. R. Co.

Statement of the Case.

NICHOLLS, J. Plaintiff alleged that the New Orleans Great Northern Railroad Company and the New Orleans & Northeastern Railroad Company are indebted to petitioner in solido in the sum of $15,233.83, together with interest from date of judicial demand, for this, to wit:

That petitioner's occupation was that of a railroad fireman up to the 19th day of September in the year 1905; that he was employed by said New Orleans & Northeastern Railroad in his said capacity as a railroad fireman up to said time, and had been continuously in the employ of said railroad as a fireman for more than three years. That petitioner worked as a fireman on the locomotives of said road on a run for more than three years, between New Orleans and the town of Covington, in St. Tammany parish, in this state, and that the services petitioner rendered to said road were always satisfactory to the officials thereof to the best knowledge of petitioner. That on the 19th day of September in the year 1905 petitioner was sent out with engine No. 210 of said New Orleans & Northeastern Railroad Company, on a special trip from said town of Covington to New Orleans. That while said special train, consisting of a locomotive, a tender, and one coach, was the property of the New Orleans & Northeastern Railroad Company, the said special train was sent out under the control of and by orders from the New Orleans Great Northern Railroad

Company. That said special train was made up to bring a yellow fever patient (at the time in question there was a yellow fever epidemic in the city of New Orleans and its environs) from Covington to the city of New Orleans.

That one Nick Ferry was in charge of said locomotive No. 210 as engineer. That said special train was made up in order to provide for the emergency aforesaid, and was made up in haste and precipitation and without due care being taken that the engine and its appliances were in good and safe working order.

That said special train started from the town of Covington at 11:55 a. m. on said run to New Orleans. That when said train got near the station of St. Tammany, say at least about 1,000 feet from said station, the engineer should have seen ahead of him on the road which is contiguous to the St. Tammany station, and which crosses the tracks of said New Orleans & Northeastern Railroad near there, an obstruction consisting of a team of oxen dragging a wagon of three pilings of unusual length and size. That just at said time petitioner was firing the engine and did not see ·the obstruction aforesaid. That petitioner, when he did see the obstruction, and seeing that it was impossible for the oxen to get across the railroad track before the engine reached that point, and petitioner believing that the only way by which he could save his life was to jump from the cab of said engine to the ground, petitioner when the special arrived at, say 142 feet from the road (at which time he first saw the obstruction), and just before crossing a large ditch about said distance from the obstruction, the engineer of the engine having already jumped and hallooed to petitioner, he did then and there jump from said engine cab onto the ground.

That said train, after the engineer and petitioner had jumped therefrom, rushed on and did run into the aforesaid wagon of piling, and, contrary to all reasonable expectations and extraordinary in the extreme, the said train instead of being derailed and smashed to pieces, struck said wagon and piling and snapped the latter in two without leaving the tracks and with small damage to said train. That thereafter said train proceeded on its way to New Orleans.

Petitioner alleged specially: That, had said engine been in good state of repair, and particularly had the brake thereof been in working order and not in the dilapidated and imperfect condition in which it was, that said engineer could have stopped said special train within ample time to have prevented said accident. That said oxen and its load of three piling was a most conspicuous object, and the day in question was a clear day, and the sun was then shining brightly and objects could be descried for more than two miles looking down and up the railroad tracks; there being no curves in the particular part of the tracks in the neighborhood of this occurrence that could impede or obstruct the view.

That said accident was immediately and directly caused by the gross negligence, fault, and carelessness and want of skill on the part of the New Orleans Great Northern Railroad, its officers, and employés and by the said New Orleans & Northeastern Railroad, its officers, and employés, and that petitioner did not in any manner contribute to said accident. That said brake and said whistle on said engine were defective, old, and insufficient to the knowledge of said New Orleans & Northeastern Railroad and said New Orleans Great Northern Railroad and their agents. That it was the duty of the defendants to furnish, for the use of petitioner in the performance of his duties, good, complete, and safe appliances, and to maintain same in good order and condition.

Petitioner now alleged that he broke his leg as a result of the aforesaid jump from said train; that he was brought to the city

of New Orleans, when he was taken to the New Orleans Sanitarium, where he received treatment, but, owing to the severity of the fracture of his leg, it became necessary to amputate the same; that petitioner went to said sanitarium on the 19th of September (on the day of the accident) and did not leave the same until October 11th thereafter; that he suffered great pain and agony as a result of said broken leg and the subsequent amputation thereof, and still suffers and will always suffer by reason of the loss of said limb.

Petitioner alleged that he was a married man, 26 years old, with one child 11 months old, who with his wife, are dependent upon him entirely for their support and maintenance; that petitioner, owing to the loss of his said limb, will be utterly unable to hereafter follow his occupation of locomotive fireman; and that the loss of his limb will hamper and prevent, if not entirely incapacitate, him from any other employment by which he could earn a livelihood for himself, his said wife and child.

Petitioner now averred: That he had sustained actual damages by reason of the loss of said limb and the pain and agony, loss of time, mental suffering, incapacitation as a locomotive fireman, and from other employment, in the full sum of $15,000. That petitioner is indebted to Dr. E. Denegre Martin for attention as surgeon in the sum of $150, and to the New Orleans Sanitarium for $83.83 for sanitarium charges, making, together with said $15,000, the sum of $15,233.83, which he is entitled to have and recover from said defendants, with interest at the legal rate from date of judicial demand until paid.

That under the law, he is entitled to a trial by jury and that he desired to have this cause tried by jury, and that he deposits herewith the necessary jury fee.

In view of the premises, he prayed that the New Orleans Great Northern Railroad Company and the New Orleans & Northeastern Railroad Company be duly cited to appear and answer this petition, and that there be judgment in his favor and against said New Orleans Great Northern Railroad Company, and said New Orleans & Northeastern Railroad Company, in solido, condemning them to pay petitioner the sum of $15,233.83 damages, as hereinbefore set forth, together with interest at the legal rate from date of judicial demand until paid.

He further prayed that trial by jury be ordered in the matter for costs and for general relief.

Defendants excepted to plaintiff's petition on the ground that it disclosed no cause of action.

In view of the premises, exceptors prayed that this, its exception, be maintained, that plaintiff's suit be dismissed at his costs, and for all and general and equitable relief.

The district judge rendered judgment as follows on defendants' exceptions of no cause of action:

"It is ordered by the court that said exceptions (considering the law and for the reasons in writing on file herein) be maintained and that plaintiff's suit be dismissed at his cost."

The plaintiff appealed.

### Opinion.

Under plaintiff's pleadings, the district court correctly sustained the exception of the defendants that "plaintiff's petition disclosed no cause of action." Plaintiff made himself the affirmative declaration that—

"when the train got near the station of St. Tammany, at least 1,000 feet, from said station, the engineer should have seen ahead of him on the road an obstruction consisting of a team of oxen dragging a wagon of three pilings of unusual length and size and should have stopped the train, but, instead, the train pursued its course; that said oxen and its load was a most conspicuous object and the day in question was a clear day, the sun was then shining brightly and objects could be descried for more than two miles looking down and up the road, there being no curves in the particular

part of the track in the neighborhood of this occurrence that could impede or obstruct the view; that the engineer could have stopped the said train within ample time to have prevented the accident."

It appears from plaintiff's petition that the engineer, not only did not stop the train, but that he jumped off before the obstruction was reached, and that he himself followed his example, and that no injury resulted to the train from its collision with the ox team. From this recital of facts the alleged proximate cause of plaintiff's injury was the failure of the engineer to see as he should have done the obstruction clearly visible ahead of him, coupled with his own unnecessary act of precipitately jumping from the train. The engineer and the fireman occupied the relation of fellow servants, and plaintiff has no right of action against the defendants or either of them, under the circumstances stated. Plaintiff insists, however, that his petition shows that, had the engineer attempted to have stopped the train, his effort to do so would have been futile, as the engine was out of good repair, the brake particularly so; it being in a dilapidated and imperfect condition. It is true that such an allegation was made, but there is no averment that the engineer made any attempt to stop the train, and that it was by reason of the defects charged that the accident occurred. Under the allegations the defects in the engine brake had nothing to do with the plaintiff's injury. There is no causal connection set up between the two facts.

Plaintiff urges that the court should have granted him the right to amend his pleadings, but he did not ask such relief from the court, even at the time or through an application for a new trial. He does not even in this court claim that he can faithfully make an allegation that the engineer made an attempt to stop the train and failed to do

so because of the bad condition of the engine and brakes.

The judgment appealed from is hereby affirmed.